CENTER FOR DISABILITY ACCESS
Isabel Masanque, Esq., SBN 292673
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Elliott Montgomery, Esq., SBN 279451
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Schutza**, <br><br>          Plaintiff, <br><br>     v. <br><br> **McGrath Kearny, LP**, a California Limited Partnership; <br> **LC Kearny Investments, LLC**, a California Limited Liability Company; <br> **Kearny Mesa Bowl, Inc.,** a California Corporation; and Does 1-10, <br><br>          Defendants. | **Case No**. 3:18-cv-00198-L-JMA <br><br> **First Amended Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Scott Schutza complains of Defendants McGrath Kearny, LP, a California Limited Partnership; LC Kearny Investments, LLC, a California Limited Liability Company; Kearny Mesa Bowl, Inc., a California Corporation; and Does 1-10 ("Defendants") and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a

1

First Amended Complaint

paraplegic who cannot walk and who uses a wheelchair for mobility.

2. Defendants McGrath Kearny, LP and LC Kearny Investments, LLC owned the real property located at or about 7585 Clairemont Blvd., San Diego, California, in September 2017.

3. Defendants McGrath Kearny, LP and LC Kearny Investments, LLC owned the real property located at or about 7585 Clairemont Blvd., San Diego, California, in January 2018.

4. Defendants McGrath Kearny, LP and LC Kearny Investments, LLC own the real property located at or about 7585 Clairemont Blvd., San Diego, California, currently.

5. Defendant Kearny Mesa Bowl, Inc. owned the Kearny Mesa Bowl located at or about 7585 Clairemont Blvd., San Diego, California, in September 2017.

6. Defendant Kearny Mesa Bowl, Inc. owned the Kearny Mesa Bowl located at or about 7585 Clairemont Blvd., San Diego, California, in January 2018.

7. Defendant Kearny Mesa Bowl, Inc. owns the Kearny Mesa Bowl ("Kearny Bowl") located at or about 7585 Clairemont Blvd., San Diego, California, currently.

8. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are

First Amended Complaint

ascertained.

**JURISDICTION & VENUE:**

9.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

10. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

11. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

12. Plaintiff went to the Kearny Bowl in September 2017 and January 2018 to eat and drink.

13. The Kearny Bowl is a facility open to the public, a place of public accommodation, and a business establishment.

14. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Kearny Bowl.

15. Unfortunately, although parking spaces were one of the facilities specifically reserved for patrons, there were no accessible parking spaces available for persons with disabilities that complied with the Americans with Disability Act during Plaintiff's visit.

16. The parking stalls and access aisles reserved for persons with disabilities were not level with each other.

17. The parking spaces and access aisles had slopes greater than 2.1%.

18. Currently, the parking stalls and access aisles are not level.

19. Currently, the parking stalls and access aisles have slopes greater than 2.1%.

20. The defendants did not have a policy or procedure in place to ensure that the parking spaces reserved for persons with disabilities remained useable prior to Plaintiff's visit.

21. The defendants do not have a policy or procedure in place to ensure that the parking spaces reserved for persons with disabilities remain useable currently.

22. Tables are also one of the facilities, privileges, and advantages offered by Defendants to patrons of the Kearny Bowl.

23. On information and belief, plaintiff alleges the tables in the sports bar did not provide the required knee and toe clearance. As a result, the tables were inaccessible to plaintiff.

24. Restrooms are also one of the facilities, privileges, and advantages offered by Defendants to patrons of the Kearny Bowl.

25. There is a toilet stall in the sports bar restroom. On information and belief, plaintiff alleges that the toilet stall door is too narrow for wheelchair users.

26. Currently, the toilet stall in the sports bar restroom is not accessible to wheelchair users because the toilet stall door is too narrow.

27. Plaintiff was unable to get inside the toilet stall.

28. Plaintiff personally encountered these barriers.

29. These inaccessible facilities denied the plaintiff full and equal access and caused him difficulty and frustration.

30. There is another men's restroom located in the main area of the bowling alley.

31. Although Plaintiff did not personally encounter the barrier, the

4

First Amended Complaint

plumbing underneath the sink was not wrapped to protect against burning contact.

32. There was no clear floor space in front of the disposable toilet seat cover dispenser because it was mounted on the wall behind the toilet.

33. Currently, the plumbing underneath the sink is not wrapped to protect against burning contact.

34. Currently, there is no clear floor space in front of the disposable toilet seat cover dispenser because it is mounted on the wall behind the toilet.

35. Transaction counters are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Kearny Bowl.

36. However, the transaction counter where customers rent bowling shoes wasn42 inches high. There was no lowered, 36-inch or lower portion of the counter for use by persons in wheelchairs.

37. Currently, the transaction counter is more than 36 inches high.

38. Currently, there is no lowered, 36-inch or lower portion of the counter for use by persons in wheelchairs.

39. Plaintiff would like to return and patronize the Kearny Bowl but will be deterred from visiting until the defendants cure the violations.

40. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

41. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

42. For example, there are numerous paint/stripe companies that will stripe

First Amended Complaint

a level parking stall and access aisle and install proper signage on short notice and for a modest price, sometimes as low as $300, in full compliance with federal and state access standards.

43. Wrap can be installed under the sink at a cost of no more than $25.

44. Plaintiff is and has been deterred from returning and patronizing the Kearny Bowl because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the Kearny Bowl as a customer once the barriers are removed.

45. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

46. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiff and against all

First Amended Complaint

defendants (42 U.S.C. section 12101, et seq.)

47. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

48. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

49. Under the 1991 Standards, parking spaces and access aisles must be

level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Here, the access aisle is not level and has a ramp taking up part of the access aisle. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up curb ramps are not permitted to project into access aisles and parking spaces. *Id.* No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

50. Here, the failure to provide level parking is a violation of the law.

51. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

52. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

53. Clear floor space that allows a forward or a parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles, and other operable equipment. 1991 Standards § 4.27.2; 2010 Standards § 309.2.

54. Here, the failure to provide such floor space is a violation of th*e* ADA.

55. Dining surfaces must provide the required clear floor space under Section 305, as well as sufficient knee and toe clearance for wheelchair users under Section 306 of the 2010 Standards. See 2010 Standards § 902.2.

56. Here, the failure to provide dining tables with the necessary toe and knee clearance is a violation of the ADA.

57. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

8

First Amended Complaint

58. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

59. Given its location and options, plaintiff will continue to desire to patronize the Kearny Bowl but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of plaintiff and against all defendants) (Cal Civ § 51-53)

60. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

61. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Civ. Code § 51(f), 52(a).)

62. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

63. Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with physical symptoms that include back pain, neck pain and shoulder pain, the plaintiff does not value this frustration and physical personal injury greater than the amount of the statutory damages.

**PRAYER**:

9

First Amended Complaint

Wherefore, Plaintiff prays that this court award damages and provide relief as follows:

1. For injunctive relief, compelling defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act which damages provide for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; Cal. Civ. Code § 52.

Dated: February 19, 2018          CENTER FOR DISABILITY ACCESS

                                              By:   /s/ Elliott Montgomery
                                                    Elliott Montgomery, Esq.
                                                    Attorney for Plaintiff

First Amended Complaint